**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| HIAWATHA BARNES, | |
| Plaintiff, | No. 1:23-CV-16836 |
| v. | Judge Edmond E. Chang |
| BOARD OF EDUCATION FOR THE CITY OF CHICAGO, | |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Hiawatha Barnes, a former teacher for the Chicago Public Schools system, sues the Board of Education for the City of Chicago, alleging disability discrimination and harassment under the Americans with Disabilities Act, 42 U.S.C. § 12117. R. 27, Am. Compl.[1] According to Barnes, the Board and its employees failed to provide accommodation for his sinus disability and then harassed and discriminated against him in connection with his requests. R. 39, Pl.'s Resp. at 2. The Board now moves to dismiss the amended complaint. R. 29, Def.'s Mot. Because Barnes' claims against the Board are time-barred or otherwise un-exhausted, the amended complaint is dismissed, this time with final judgment to be entered.

---

[1]Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number. This Court has subject matter jurisdiction over this case under 28 U.S.C. § 1331.

## I. Background

In deciding a motion for judgment on the pleadings, the Court takes all well-pleaded allegations as true and draws all reasonable inferences in Barnes' favor. *Hayes v. City of Chicago,* 670 F.3d 810, 813 (7th Cir. 2012).[2] The amended complaint recounts facts in a non-chronological fashion and its allegations are not crystal clear, but the most pertinent facts are summarized here.

Barnes began teaching at a CPS school in 2016. Am. Compl. at 6. In February 2020, Barnes told the school principal that he was suffering from respiratory health issues, which caused symptoms including coughing, wheezing, and shortness of breath. *Id.* These symptoms placed Barnes at a heightened risk of suffering COVID-19 complications, so he had to request leave from work from time to time, though the exact frequency or length of the leave requests is not spelled out. *Id.* The Board's response to Barnes' accommodation requests was allegedly less than ideal, which made it "difficult [for Barnes] to teach but not impossible." *Id.* at 7. In May 2020, Barnes was quarantined due to COVID-19. *Id.* The next month, a representative from the Board emailed Barnes, suggesting that the Board was looking into whether Barnes was "having issues that prevented [him] from participating in remote learning." *Id.*

---

[2]Although the Board moves to dismiss, it relies on Civil Rule 12(c) to argue that Barnes' claims are untimely. *See* Def.'s Mot,; R. 30, Def.'s Br. at 7–9. The right way to think about a dismissal for untimeliness based solely on the complaint is that it is essentially a judgment on the pleadings under Federal Rule of Civil Procedure 12(c). So this Opinion treats the motion as primarily a motion for judgment on the pleadings.

During this time, in March 2020, the Board opened up an investigation into accusations that Barnes physically abused a student in his class. Am. Compl. at 5–6. To Barnes's way of thinking, the Board's investigation was incomplete; the investigator did not interview key witnesses or credit Barnes' personal account of the incident. *Id.* The resolution of the investigation is unclear. Barnes states that the Board found no credible evidence of abuse in its June 2020 investigation report, but also that it issued an October 2023 warning resolution stating that Barnes failed to call security during the episode and outlining deficiencies in Barnes' conduct. *Id.* at 6.

In October 2021, Barnes complained to the CPS Equal Opportunity Compliance Office about disability-related harassment at work, and that office opened an investigation. In December 2021, Barnes filed a workers' compensation claim due to the stress of these workplace issues. Am. Compl. at 9. CPS denied that claim. *Id.* at 5. Around the same time, Barnes was disciplined for insubordination and attendance problems and placed on a performance improvement plan. *Id.* at 9. The next month, Barnes applied for accommodation for the school's transition back to in-person learning, and the school granted him leave until March 2022. *Id.* at 1–2. But when Barnes returned to work, he was greeted by a disorganized and dirty classroom, so he submitted another accommodation request. *Id.* at 2–5. That request was denied. *Id.* at 4. He also experienced some hostility with coworkers upon his return. *Id.* at 2–3.

The ADA issued a determination of accommodations letter in April 2022, presumably denying Barnes' request. Am. Compl. at 4. According to the ADA, Barnes had "continue[d] to call and email to ask for the same accommodation" while also

3

declining to meet with the school administration or ADA. *Id.* So later that month, the school requested that Barnes undergo a Fitness-For-Duty examination. *Id.* 3–4. The culmination of these events is unclear, but Barnes stopped working for CPS in April 2022. *See id.* at 3 (stating that Barnes was removed from active service for the Fitness-For-Duty Examination), 10 (stating that Barnes "was forced" to resign). On November 1, 2022, the CPS Equal Opportunity Compliance Office informed Barnes that it was closing its investigation into his complaint of workplace harassment. *Id.* at 6.

Barnes filed a charge of discrimination with the Equal Employment Opportunity Commission on August 30, 2023. *See* R. 17-2, EEOC Charge. In his charge, Barnes alleged that he asked for a reasonable accommodation for his disability and was denied. *Id.* at 2. He also alleged that he asked CPS "for a job that reflects [his] qualifications as a professional" and was denied that as well. *Id.*

Barnes then filed this suit in December 2023, R. 1, Compl., alleging that the Board discriminated against him on the basis of his disability. *Id.* at 4. The Board moved to dismiss the original complaint as untimely, and the Court granted the dismissal without prejudice. R. 16, Def.'s First Mot.; R. 23, 08/08/2024 Minute Entry. In granting the dismissal, the Court explained that Barnes could not plead an ADA claim for allegations occurring before November 3, 2022, because they were outside of the permissible limitations range. 08/08/2024 Minute Entry. Barnes filed his amended complaint, again alleging that the Board discriminated against him, harassed him, and failed to accommodate him for his disability. *See generally* Am. Compl. The Board now moves to dismiss the amended complaint. *See generally* Def.'s Mot.

4

## II. Legal Standard

As a threshold matter, it is worth acknowledging that "[d]ismissing a complaint as untimely at the pleading stage is an unusual step, since a complaint need not anticipate and overcome affirmative defenses, such as statute of limitations." *Sidney Hillman Health Ctr. of Rochester v. Abbott Labs., Inc.*, 782 F.3d 922, 928 (7th Cir. 2015) (cleaned up).[3] Nevertheless, when the allegations of the complaint itself reveal that the case is untimely, dismissal is appropriate. *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012).

A party may move for judgment on the pleadings after the pleadings are closed. Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings is subject to the same standard as a motion to dismiss under Rule 12(b)(6). *Hayes v. City of Chicago*, 670 F.3d 810, 813 (7th Cir. 2012). In deciding a motion for judgment on the pleadings, the Court must accept all well-pleaded allegations as true and view the alleged facts in the light most favorable to the non-moving party. *Id.* Judgment on the pleadings is proper if it appears beyond doubt that the non-moving party cannot prove any set of facts sufficient to support his claim for relief. *Id.* In ruling on a motion for judgment on the pleadings, the Court considers the pleadings alone, which consist of the complaint, the answer, and any documents attached as exhibits. *N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998).

---

[3] This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

### III. Analysis

### A. Timeliness

The Board first argues that Barnes' ADA claims are subject to the 300-day limitations rule, so he may only seek relief for events occurring between November 3, 2022, and August 30, 2023. Def.'s Br. at 7–9. According to the Board, Barnes has not alleged a plausible ADA claim from within that window of time, and so his case should be dismissed. *Id.* at 8–9. The Court agrees.

"Under Title VII, a plaintiff in Illinois must file an employment discrimination charge with the EEOC within 300 days 'after the alleged unlawful employment practice occurred.'" *Stepney v. Naperville Sch. Dist. 203*, 392 F.3d 236, 239 (7th Cir. 2004) (quoting 42 U.S.C. § 2000e–5(e)(1)). "Because the ADA's enforcement provision expressly incorporates § 2000e–5 of Title VII, claims for discrimination under the ADA also must be filed within 300 days after the alleged unlawful employment practice occurred." *Id.* (citing 42 U.S.C. § 12117(a)) (internal quotation marks and citation omitted). Thus, the limitations cutoff applies against any claim that arose more than 300 days before Barnes filed his EEOC charge. *See Volovsek v. Wis. Dep't of Agric., Trade & Consumer Prot.,* 344 F.3d 680, 687 (7th Cir. 2003) (explaining that the limitations period on Title VII suits means that an EEOC charge "reaches back 300 days" for discrimination). The Board is thus correct that the only claims that can be considered must have arisen within 300 days of Barnes' filing of the EEOC charge (which was on August 30, 2023). Def.'s Br. at 8. So the relevant window for the Court's

consideration of Barnes' ADA discrimination claims is November 3, 2022, to August 30, 2023.

The amended complaint does not allege any ADA claim arising between November 2022 and August 2023. Aside from Barnes' allegation that the CPS Equal Opportunity Compliance Office informed him that it was closing out the harassment investigation on November 1, 2022, the next allegation arises in October 2023, after Barnes' filing of his discrimination charge with the EEOC. Am. Compl. at 3, 6. Yes, the amended complaint alleges a myriad of facts pertaining to his need for accommodation during the COVID-19 era and the investigation into the physical-abuse accusations, but those all date back to 2020 and 2021, so they are wholly outside of the limitations window. *See generally* Am. Compl. And the amended complaint's silence on the post-Spring 2022 period tracks with his concession that he ceased working as a CPS teacher in April 2022.[4] *Id.* at 3, 10; *see also Dunn v. Grant Hosp. of Chicago,* 1997 WL 51450, at *2 (N.D. Ill. Jan. 30, 1997). Although a retaliation claim may sometimes arise in the post-employment context where employers have blacklisted a former employee, Barnes does not allege anything of that nature in the amended complaint, nor did he give any hint of a retaliation claim in his EEOC charge. *See* EEOC Charge; Am. Compl.

---

[4]The Court adds that it is not entirely clear what Barnes' current employment relationship is with CPS. Barnes' response brief seems to suggest that he returned to CPS as a substitute teacher in Spring 2023. *See* Pl.'s Resp. at 4. But he apparently "constructively resigned" in July 2024. *Id.* at 5. That said, the Court need not delve further into piecing together the employment timeline, because Barnes has only filed a single EEOC charge which sets the limitations period within which he may plead an ADA claim before this Court.

In his response, Barnes argues that he has alleged a continuing violation theory, "linking a series of discriminatory acts with at least one occurring within the charge-filing period …." Pl.'s Resp. at 2; *see also id.* at 2–7 (listing additional events from the 2022–2023 period). But he cannot cure the lack of timely allegations in the amended complaint by merely arguing in the briefing that there are additional, timely events to bring the pre-November 2022 allegations within the purview of his claim. "It is a basic principle that the complaint may not be amended by the briefs in opposition to a motion …." *Thomason v. Nachtrieb,* 888 F.2d 1202, 1205 (7th Cir. 1989). So Barnes' inclusion of new facts in his response is not a proper means of pleading a continuing violation. Barnes' discrimination claim under the ADA is dismissed because all relevant allegations in the amended complaint are untimely.[5]

### B. October 2023 Warning

The Board also argues that to the extent Barnes is attempting to allege an ADA retaliation claim in connection with the October 2023 written warning, any claim would fail for a number of reasons, including that it was never mentioned or included in any EEOC charge. Def.'s Br. at 10–11. The Board is right: Barnes' complaint does not plead a retaliation claim arising from the October 2023 warning, but even if he did, it would warrant dismissal for failure to exhaust his remedies.

---

[5]Having found the discrimination claim untimely, the Court need not consider the Board's alternative argument that the complaint should be dismissed because it is "confusing and implausible." Def.'s Br. at 9–10.

"Generally, a plaintiff may not bring claims under [the ADA] that were not originally brought among the charges to the EEOC." *Petes v. Renaissance Hotel Operating Co.,* 307 F.3d 535, 550 (7th Cir. 2002) (cleaned up). But a plaintiff may be permitted to proceed on claims that were not explicitly stated in his charge if the claim was "like or reasonably related to the EEOC charges" such that the claim "reasonably could be expected to grow out of an EEOC investigation of the charge." *Id.* (cleaned up). Thus, where the claims in the civil suit lack a factual relationship to the claims in the EEOC charge, the claims should be dismissed. *Id.* at 550–51.

The amended complaint only vaguely references the October 2023 warning a couple of times, stating that it was "issued … based partly on the harassment investigation," that it "outlin[ed] deficiencies in [Barnes'] conduct" based on fabricated statements, and suggesting that it was an "intentional false report." Am. Compl. at 3, 5–6. These vague and speculative allegations do not plausibly state a retaliation claim, so Barnes' claim premised on the October 2023 warning (to the extent he is trying to bring one) is dismissed.[6]

But even if Barnes had plausibly alleged a retaliation claim arising from the October 2023 warning in his amended complaint, it does not appear that he has exhausted that claim. His first (and to this Court's knowledge, only) EEOC charge

---

[6]The Court notes that it is particularly impossible to assess the plausibility of an ADA claim arising from the October 2023 warning because the warning was not included in the record at all by either party, so the Court lacks essential context. And that context is important here, where a plaintiff alleging retaliation based on their filing of an EEOC charge is not always required to file a second, retaliation-specific charge.

9

specifically complained of discrimination and failure to accommodate; it is devoid of any allusions to a retaliation claim at all. *See* EEOC Charge at 2. The Court hastens to add that there is case law in this Circuit holding that a second charge is not always needed for retaliation. *See Luevano v. Wal-Mart Stores, Inc.,* 722 F.3d 1014, 1030 (7th Cir. 2013) ("We have held for practical reasons, to avoid futile procedural technicalities and endless loops of charge/retaliation/charge/retaliation, etc., that a plaintiff who alleges retaliation for having filed a charge with the EEOC need not file a second EEOC charge to sue for that retaliation."); *McKenzie v. Ill. Dep't of Transp.,* 92 F.3d 473, 482–83 (7th Cir. 1996) (collecting cases). But based only on the vague mentions of the October 2023 warning in the amended complaint, the Court has no reason to believe that Barnes' potential retaliation claim fits into the circumstances that would excuse the need for a second charge.

To the extent that Barnes attempts to argue that the October 2023 warning should be deemed exhausted by his earlier EEOC charge because it is all one interconnected employment violation, that argument also fails. The October 2023 warning, as far as the Court can surmise, relates to the physical-abuse accusations that the Board began investigating in March 2020. *See* Am. Compl. at 3, 5–6. And Barnes' EEOC charge makes no mention of the abuse incident or investigation. *See* EEOC Charge at 2. That is, a EEOC investigation stemming from his August 2023 EEOC charge would not have necessarily uncovered the October 2023 warning. So any ADA claim premised on the October 2023 warning has not been properly alleged—but even if it had been, it has not been exhausted.

## IV. Conclusion

For the reasons discussed in this Opinion, the Board's motion for judgment on the pleadings, R. 29, is granted. The amended complaint is dismissed. This time, the dismissal is with prejudice. Barnes has already had an opportunity to amend the complaint once, and had the benefit of a prior round of dismissal briefing and a docket entry, R. 23, explaining the limitations issue. So final judgment shall be entered.

ENTERED:

_____s/Edmond E. Chang_____
Honorable Edmond E. Chang
United States District Judge

DATE: September 27, 2025

11